IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIAN FRANK GUERRY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SCOTT FRAKES, Director; BRIAN GAGE, Warden; GUIFFE, Case Worker; and THOMPSON, Case Worker;<br><br>                    Defendants. | 8:15CV323<br><br>MEMORANDUM AND ORDER |

    Plaintiff Brian Frank Guerry ("Guerry"), currently an inmate at the Omaha Correctional Center, was an inmate at the Tecumseh State Correctional Center ("TSCI") during a prison riot that occurred at TSCI on May 10, 2015. Guerry filed suit against Defendants Scott Frakes ("Frakes"), Director of the Nebraska Department of Correctional Services, Brian Gage ("Gage"), Warden of TSCI, Chelsea Guiffre ("Guiffre"), a unit manager, and Daniel Thompson ("Thompson"), a case worker, in their individual capacities under 42 U.S.C. § 1983, alleging Eighth Amendment failure-to-protect claims. (Filing No. 1.)[1] Defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the basis of qualified immunity. (Filing Nos. 41, 42.) For the reasons that follow, the court will deny Defendants' Motion without prejudice to reassertion in a motion for summary judgment.

---

    [1] Although Guerry's Complaint alleges additional claims, these are the claims that the court determined could proceed after initial review and Defendants' Motion to Dismiss. (*See* Filing Nos. 13, 33.)

## I. BACKGROUND

Plaintiff alleges he resided in the protective custody unit of the Tecumseh State Correctional Institution ("TSCI") on May 10, 2015. Plaintiff claims he resided in the protective custody unit because he is a sex offender and fears violence from gangs within general population based on an assault he suffered from them in 2013. (Filing No. 1 at CM/ECF p. 4.)

At approximately 4:00 p.m. on this date, Plaintiff began to suffer from smoke inhalation. He called officers in the unit's "control bubble" for help. At this time, the control bubble was staffed by three jail officials, including Guiffre[2] and Thompson. Plaintiff alleges Guiffre and Thompson remotely opened some cell doors in the unit, but not others. Plaintiff's cell door was among those opened. (*Id*.)

Plaintiff exited his cell and called out for help, but Guiffre and Thompson were no longer in the control bubble. (*Id*.) He proceeded to go to the "small yard," where prison staff had instructed protective-custody inmates to go during a fire, but the door to the small yard was locked. Instead, Guiffre and Thompson had unlocked the door to the "Bigger fence in area yard," which allowed general-population inmates, including gang members, to enter the unit. (*Id*. at CM/ECF pp. 5, 13.) For the next nine or so hours, general population inmates entered the protective-custody unit, harassed protective-custody inmates, and started fires. The general population inmates had access to the control bubble. During this time, Plaintiff and ten other inmates locked themselves into a cell. Plaintiff alleges he suffered approximately 10 hours of smoke inhalation. (*Id*. at CM/ECF pp. 6-7.) Law enforcement arrived at approximately 2:00 a.m. the following morning and provided assistance. (*Id*. at CM/ECF p. 7.)

---

[2] Guerry refers to Defendant Guiffre as "Guiffe" in his Complaint.

Plaintiff alleges prison staff immediately returned him to his cell, and did not treat him for smoke inhalation. Following the prison riot, Plaintiff "ask[ed] for days to be seen by medical," but he was advised there would be no inmate movement. Finally, on June 3, 2015, Plaintiff received medical attention. (*Id.*)

Guerry filed grievances with prison officials. (*Id.* at CM/ECF pp. 17-20.) The following response is attached to Guerry's Complaint:

> You contend while housed at Tecumseh State Correctional Institution (TSCI) that during the May 10, 2015 TSCI disturbance, TSCI staff failed to protect Protective Custody inmates by abandoning their posts and leaving Protective Custody inmates to be victimized by General Population inmates. During the time period you mention in your Grievance, TSCI staff was busy working through a significant emergency situation. TSCI inmate and staff safety was an area of primary concern during the entire period surrounding the May 10, 2015 disturbance. The May 10, 2015 TSCI disturbance ultimately impacted all aspects of facility operations in some way. TSCI staff made every effort to provide the best environment possible considering the circumstances and difficulties created by the May 10, 2015 incident.

(*Id.* at CM/ECF p. 20.)

## II. STANDARD OF REVIEW

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Minch Family LLLP v. Buffalo–Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). This is the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice "to state a claim to relief that is plausible on its face." *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although a complaint need not include detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629–30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "Courts must accept ... specific factual allegations as true but are not required to accept ... legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)) (internal quotation marks omitted). When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations

to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

### III. QUALIFIED IMMUNITY STANDARDS

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (internal quotes and citations omitted).

Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). Courts may address either prong of the analysis first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

### IV. DISCUSSION

The allegations in this matter are substantially similar to those in *Clayborne v. Frakes*, Case No. 8:15CV198 (D. Neb. October 27, 2016), a case arising from

the same prison riot. The court granted several of the current defendants qualified immunity in *Clayborne*. (Filing No. 57, *Clayborne*, Case No. 8:15CV198.) However, the court is mindful that, in *Clayborne*, it granted the defendants qualified immunity based upon a motion for summary judgment. The issue, here, is whether Guerry's Eighth Amendment failure-to-protect claims against Defendants can survive a motion for judgment on the pleadings on the basis of qualified immunity.

The Eighth Amendment prohibits the government from engaging in cruel and unusual punishment, which requires that prison officials take reasonable measures to protect inmates from violence from other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). In order to make out an Eighth Amendment violation "the offending conduct must be *wanton*." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991) (emphasis in the original)). The word "wanton[ ] does not have a fixed meaning" and its meaning in the Eighth Amendment context depends upon the circumstances in which the alleged violation occurs. *Id.* Normally, the Eighth Amendment standard for conditions of confinement and medical care is whether the defendant acted with "deliberate indifference." *See id.* (citing *Wilson*, 501 U.S. at 303). In cases involving prison riots, however, wantonness is demonstrated by acting "maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). This more stringent standard "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 322.

According to Guerry's allegations, which the court must accept as true, Defendants left him with a Hobson's Choice when they opened the door to the yard with general population inmates. He could lock himself in his cell to avoid

6

another assault from gang members amongst the general population inmates but risk smoke inhalation. Alternatively, he could exit his cell to avoid the smoke inhalation but risk another assault from gang members amongst the general population inmates. Guerry's allegations suggest that, in order to protect his health and safety, all Defendants had to do was open the door to the "small" yard instead of the "bigger" yard. The court cannot say, at this juncture, that such facts could not support an Eighth Amendment failure-to-protect claim as a matter of law.

For instance, the court does not have evidence that Guiffre and Thompson exited the control bubble for their own safety.[3] The court does not have evidence about the operation of the control bubble or the operation of the yard doors. Nor does the court have any evidence why opening the protective-custody cells and opening the "bigger" yard was accomplished without also opening the door to the "small" yard where prison staff had instructed protective-custody inmates to go during a fire. If the door to the "small" yard was left locked so protective-custody inmates could be preyed upon by general population inmates or suffer smoke inhalation in their cells in order to avoid assault, then such action would have been done "maliciously and sadistically for the very purpose of causing harm." Still further, the court does not have evidence about the circumstances that prison officials faced that prevented Guerry's rescue for 10 hours.

In short, although the standard is high in a prison riot setting, the court cannot know without evidence whether Defendants acted "maliciously and sadistically for the very purpose of causing harm" or whether they made "a considered choice." In a case of this complexity as evidenced by the prisoner's Complaint and reasonable inferences drawn therefrom, Defendants have pushed Fed. R. Civ. P. 12(c) beyond the breaking point.

---

[3] In *Clayborne*, the court specifically acknowledged that *the evidence* showed Defendants evacuated the control center for their own safety.

IT IS THEREFORE ORDERED that:

1.	Defendants' Motion for Judgment on the Pleadings ([Filing No. 41](#)) on the basis of qualified immunity is denied without prejudice to reassertion in a motion for summary judgment.

2.	Guerry's Motion for Reconsideration ([Filing No. 52](#)) and Objection to Defendants' Motion for Judgment on the Pleadings ([Filing No. 54](#)) are denied as moot.

3.	An amended progression order will be entered in accordance with this memorandum and order.

Dated this 22nd day of February, 2017.

> BY THE COURT:
>
> s/ *Richard G. Kopf*
> Senior United States District Judge